UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

UNITED STATES OF AMERICA,       )
                                )
            Plaintiff,          )
                                )
v.                              )       No.:    3:23-CR-33-TAV-DCP
                                )
CHRISTOPHER EDWARD ALLEN,       )
                                )
            Defendant.          )

## MEMORANDUM OPINION AND ORDER

This criminal case is before the Court on defendant's renewed motion for a judgment of acquittal and motion for a new trial [Doc. 48], which the government opposes [Doc. 49].[1]  After considering the record and controlling law, for the reasons that follow, the Court will **DENY** defendant's motion [Doc. 48].

## I.     Background

On March 15, 2023, a federal grand jury returned an indictment, charging defendant with: (1) attempted production of child pornography, in violation of 18 U.S.C. §§ 2251(a)

---

[1] In its response, the government does not specifically address each of the arguments raised in defendant's motion.  Rather, the government argues generally that defendant reiterates the arguments the Court previously denied, and, viewed in the light most favorable to the government, a rational trier of fact would have found the elements of all nine counts of the indictment [Doc. 49, p. 3].  The government contends that there was overwhelming proof at trial, each victim testified to the sexually graphic communications she had with the defendant, each victim testified that she told the defendant that she was a minor or the defendant should have known based on their multiple in-person conversations in a fast food restaurant where underage children were employed and "hung out," each victim identified herself in sexually explicit photos the defendant had requested, defendant sent some of the victims images/videos of his penis knowing the age of the victim, and defendant was arrested at an arranged meeting location with one of his youngest minor victims after texting her about having sex with him and requesting nude photos of her [*Id.*].

and (e) (Counts 1 & 8); (2) production of child pornography, in violation of 18 U.S.C. § 2251(a) and (e) (Count 3); (3) enticement of a minor, in violation of 18 U.S.C. § 2422(b) (Counts 2, 4, & 9); (4) transfer of obscene material, in violation of 18 U.S.C. § 1470 (Count 5); and (5) transportation of child pornography, in violation of 18 U.S.C. § 2252A(a)(1) (Counts 6 & 7) [Doc. 1].

The case proceeded to trial on September 23, 2024 [Doc. 37]. At the close of the government's case-in-chief, defendant made an oral motion for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure [Doc. 39]. Defendant argued that, as to the attempted production of child pornography counts,[2] the government failed to prove that he took a substantial step to accomplish that act. As to the enticement counts, defendant argued that the government failed to prove that he took a substantial step because there were no detailed plans for him to engage in any unlawful sexual activity with any of the three victims listed in these counts. As to the transfer of obscene materials count and the transportation of obscene materials counts, defendant argued that the government failed to prove that he transferred or transported the images knowing that they depicted a child under the age of 18. Finally, as to the transportation of child pornography counts, the evidence only showed that defendant emailed the images to himself from one gmail account to another and did not change devices or go to anyone else, which he asserted was insufficient under the statute.

---

[2] Although defendant asserted that the government had not established the elements of any of the counts charged in the indictment, he did not raise any specific arguments as to the production of child pornography count (Count 3).

2

As to the attempted production of child pornography counts, the government responded by pointing to the testimony of both Kylie and Raean regarding their messages with defendant as well as defendant's communications with Agent Courtney Dugger after he assumed Kylie's persona online. The government states that there were specific requests for images. As to the attempted enticement counts, the government stated that the evidence for these counts is primarily the chat messages. The government stated that there was ample evidence of defendant asking for sex and asking to meet up with the girls. In the messages, defendant attempts to make general plans to meet up with them, to have sex with them, and there is at least an inference that the request to meet up is for the purpose of having sex. Defendant also knew from the messages that these girls were under the age of 18.

As to defendant's knowledge of victims Alexis (aka "Lexie") and Chloe's ages, the government noted that Alexis testified that she would come to work in her school outfit and that she was 16 or 17 when she worked at Sonic with the defendant. The government argued that this was sufficient for the jury to find that the defendant knew or deliberately ignored that Alexis was under the age of 18. As to Chloe, the government noted that she testified that she told defendant she was in high school. She was 15 when she met the defendant and 16 when she took the images and sent them to the defendant. The government contended that this was sufficient evidence for a conviction. As to Count 5, the government argued that there was ample evidence from the message transcripts that defendant sent several images of his penis to Emma.

3

The government also responded that transporting images from one gmail account to another was sufficient to constitute transportation of an image in interstate commerce. The statute does not require that the images have to move from one device to another, it simply requires that images have to be transported using a means or facility of interstate commerce.

The Court deferred ruling on the motion, and the defendant renewed the motion at the close of all proof. The Court ultimately denied defendant's motion for judgment of acquittal.

The jury found defendant guilty on all counts [Doc. 40]. Defendant now renews his motion for a judgment of acquittal and moves, in the alternative, for a new trial [Doc. 48].

## II. Legal Standards

A motion for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure challenges the sufficiency of the evidence to support the conviction. *See* Fed. R. Crim. P. 29(c); *United States v. Montgomery*, 358 F. App'x 622, 628 (6th Cir. 2009). When reviewing such a motion, the Court must decide "whether, after viewing the evidence in a light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Gardner*, 488 F.3d 700, 710 (6th Cir. 2007). In doing so, the Court must not weigh evidence, assess witness credibility, or "substitute its judgment for that of the jury." *United States v. Chavis*, 296 F.3d 450, 455 (6th Cir. 2002). This standard places a "very heavy burden" on defendants challenging the sufficiency of the evidence. *Id.*

4

Alternatively, the Court "may vacate any judgment and grant a new trial" under Rule 33 "if the interest of justice so requires." Fed. R. Crim. P. 33(a). "The paradigmatic use of a Rule 33 motion is to seek a new trial on the ground that the jury's verdict was against the manifest weight of the evidence." *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010) (internal quotation marks and alterations omitted). But such motions should be granted "[o]nly in extraordinary circumstances . . . when the verdict exceeds the bounds of reasonableness." *United States v. Burks*, 974 F.3d 622, 625 (6th Cir. 2020) (citation omitted). "On the one hand, [the Court] must scrutinize the record and ensure that a 'miscarriage of justice' did not occur. On the other hand, the court must respect the role of the jury and ensure that evidence-supported convictions are upheld." *Id*. In contrast to a Rule 29 motion, a district judge considering a Rule 33 motion on the weight of the evidence "can act in the role of a 'thirteenth juror' and consider the credibility of the witnesses and the weight of the evidence to [e]nsure that there is not a miscarriage of justice." *United States v. Lutz*, 154 F.3d 581, 589 (6th Cir. 1998). However, "the verdict is not unreasonable simply because different inferences could have been drawn or because other results are more reasonable." *Burks*, 974 F.3d at 625 (internal quotation marks and alterations omitted).

## III. Analysis

### A. Attempted Production of Child Pornography (Counts 1 & 8)[3]

Counts 1 and 8 charged the defendant with attempted production of child pornography, in violation of 18 U.S.C. §§ 2251(a) and (e)[4] [Doc. 1]. "To convict [a defendant] of attempted production of child pornography, the government must show two things beyond a reasonable doubt: first that [the defendant] specifically intended to create child pornography . . . ; and second, that he took a substantial step towards the creation of child pornography." *United States v. Sims*, 708 F.3d 832, 835 (6th Cir. 2013). As to both Counts 1 and 8, defendant contests only the second element [*See* Doc. 48, pp. 2–3].

"A substantial step is less than what is necessary to complete the substantive crime, but more than mere preparation." *United States v. Harmon*, 593 F. App'x 455, 462 (6th Cir. 2014) (quoting *United States v. Berk*, 652 F.3d 132, 140 (1st Cir. 2010) (addressing this element in the contest of an attempted enticement conviction). But "[t]o say that a defendant must take a substantial step towards committing an offense does not mean that he must actually commit the offense." *Sims*, 708 F.3d at 835.

The Sixth Circuit has not provided any instruction as to what specifically constitutes a "substantial step" in the context of an attempted production of child pornography offense,

---

[3] Notably, defendant was convicted in Count 3 of production of child pornography. However, defendant does not appear to challenge this conviction [*See* Doc. 48].

[4] Section 2251(a) sets forth the elements of this offense, while Section 2251(e) sets forth the applicable punishment for anyone who "violates, or attempts or conspires to violate" this section. *See* 18 U.S.C. § 2251.

6

and neither the defendant nor the government cite any specific case law on this point.[5]  But the Eighth Circuit has stated that "it is established that asking for an image of a minor's genitals constitutes a substantial step to produce child pornography." *United States v. Hensley*, 982 F.3d 1147, 1156 (8th Cir. 2020) (citing *United States v. Schwarte*, 645 F.3d 1022, 1030 (8th Cir. 2011)).  Moreover, other circuits have found that verbal requests for nude photographs of minors are sufficient to constitute the "substantial step" required for conviction of an attempt under § 2251(a).  *See United States v. Moran*, 57 F.4th 977, 984 (11th Cir. 2023) (holding that defendant did not show that it was plain error to convict him of attempted production of child pornography when the "substantial step" supporting such was requesting parents send nude photographs of their children on "mom-blogs"); *United States v. Pavulak*, 700 F.3d 651, 670 (3d Cir. 2012) (holding that repeated requests for an individual to display the victim's vagina via a live webcam feed "was enough to constitute a substantial step toward 'coercing' [the victim] to 'engage in any sexually explicit conduct . . . for the purpose of transmitting a live visual depiction of such conduct'" in violation of § 2251(a)); *United States v. Wales*, 127 F. App'x 424, 431 (10th Cir. 2005) (stating that evidence that defendant asked an individual whom he believed was a 12-year-old girl to take photos of her genitals while using a false female persona was sufficient to support a conviction under § 2251(a)); *see also United States v. McGee*, 821 F.3d 644, 647 (5th Cir.

---

[5] Notably, the Sixth Circuit did determine, in an unpublished opinion, that evidence supported a conviction under § 2251 when the defendant "repeatedly asked the minor to take pictures of herself to send to him, offered to send her a camera, instructed her to find the camera that her mother had in the house, and discussed filming their sex acts." *United States v. Miller*, 696 F. App'x 696, 701 (6th Cir. 2017).

2016) (for a conviction under § 2251(a), "the jury must at least be able to draw the inference that the defendant encouraged a minor to take sexually-explicit pictures and send them to the defendant").

### 1. Count 1 (Kylie)

As to Count 1, defendant argues that the evidence showed that he began messaging Kylie on TikTok and there was no sexual content discussed [Doc. 48, p. 2]. Only when law enforcement seized control of Kylie's phone and assumed her persona did the conversations turn sexual [*Id.*]. During several messages with the agents, defendant made requests for pictures of sexual content [*Id.*]. However, other than the request itself, defendant took no further action [*Id.* at 2–3]. Thus, defendant contends that, while the intent to commit the act may have been present, the substantial step to carry out the offense was lacking [*Id.* at 3].

Viewing the evidence in the light most favorable to the government, there is ample evidence to support that defendant took a substantial step towards production of child pornography as to Kylie. On April 20, 2021, when defendant believed he was still communicating with Kylie, but after Agent Duggar had actually taken over Kylie's account, defendant sent at least three messages requesting that Kylie send nude photographs of herself. Specifically, at 3:12 p.m., defendant asks "Can I have another pic. Just for me?" and, when Agent Duggar, posing as Kylie, asked what defendant wants in the photograph, he responded "Hmmm just surprise me and tease me a little?" [Government's Exhibit ("GE") 5, p. 5]. At 3:35 p.m., after the conversation shifted from

8

pictures to meeting up, defendant asked "Could you send me your tits rn" [*Id.* at 6]. Agent Duggar, posing as Kylie, responded "How bout you see them in person" but defendant responded "I want a pic too lol" [*Id.*]. At 3:57 p.m., defendant sent "Sooo can I have a nude? Just one?" [*Id.* at 7]. The Court finds that these explicit requests for a minor to take nude photographs of herself to send to defendant are sufficient to constitute a "substantial step" towards the offense of production of child pornography.

But, even if these requests alone were insufficient, there is further evidence to support that defendant took substantial steps toward ensuring that Kylie would comply with his requests to produce child pornography. Defendant began grooming Kylie when she would come into the Taco Bell restaurant where defendant worked, by talking to her and giving her free food, eventually leading to defendant connecting with Kylie on TikTok. And once Kylie and defendant began sending direct messages on TikTok, defendant began a campaign of flattery and flirting, with comments such as "That's my girl! I'm so proud of you!" [GE 2, p. 1], "You're my favorite person! . . . When you come in, my day is way brighter!" [*Id.* at 3, 4], and "Can't wait to see you again!" [*Id.* at 11]. Defendant kept up this behavior after Agent Duggar took over Kylie's account, reiterating "you're my favorite person" [*Id.* at 13], "You make me smile so hard!" [*Id.* at 14], "we could be best friends forever lol" [*Id.*], "I honestly can't stop thinking about you. It's crazy" [*Id.* at 16], "I have a crush on you hard…" [*Id.* at 18], and "You're beautiful. Like so so pretty" [*Id.* at 19]. Further, defendant appeared to prime Kylie for sending sexual photographs by first asking for more innocuous photographs. Immediately upon texting Kylie through the phone

9

number provided by Agent Duggar, defendant asked "can I have a pic of you? Nothing crazy just one of your face" [GE 5, p. 1]. When Agent Duggar attempted to send a photograph of Kylie, defendant responded that he did not receive it "Which bothers me I want to see you really bad" [*Id.* at 3]. And, after defendant turned the conversation toward sexual topics, he said "God, now I want more pics!! I want YOU!" [*Id.* at 5]. Shortly thereafter, defendant sent his first direct request for sexual photographs [*Id.*]. Thus, even if defendant's direct requests to a minor for nude photographs was not sufficient on its own to constitute a substantial step toward the production of child pornography, the Court finds that these explicit requests, combined with defendant's grooming of the minor victim, constitutes a substantial step.

Accordingly, viewing all of this evidence in the light most favorable to the government, a rational jury could have determined that defendant took a substantial step toward the production of child pornography as relates to Count 1. Moreover, based on this evidence, the Court does not find that defendant's conviction on Count 1 was against the manifest weight of the evidence. Defendant's request for judgment of acquittal or a new trial as to Count 1 is therefore **DENIED**.

### 2.     Count 8 (Raean)

As to Count 8, defendant argues that the messages between himself and Raean took place on Snapchat and oscillated between sexual and benign conversations [*Id.*]. Like with Count 1, defendant contends that there were requests from defendant to Raean for nude

10

pictures and/or videos, but, beyond the initial request, there was no further conduct attributable to defendant to form a substantial step towards completing the offense [*Id.*].

Viewing the evidence in the light most favorable to the government, there is sufficient evidence to support that defendant took a substantial step towards production of child pornography as to Raean. The evidence presented at trial showed that, despite Raean's repeated statements that she would not send any nude photographs, defendant asked for nude photographs on several occasions. Specifically, on December 18, 2021, at 11:15 p.m., defendant sent a message stating "Flash me??" [GE 24, p. 130]. On December 20, 2021, around 11:40 a.m., defendant asked Raean who was around her, and when she responded that she was alone, he again stated "Flash me" [*Id.* at 139]. On January 7, 2022, Raean told defendant that she loved him, and he responded "Prove it lol" telling her to "Get naked" [*Id.* at 220]. On January 24, 2022, defendant asked Raean "Can I see you" and "Pop a titty" [*Id.* at 327–28]. As with Kylie, the Court finds that these explicit requests for a minor to take nude photographs of herself to send to defendant are sufficient to constitute a "substantial step" towards the offense of production of child pornography.

But, once again, even if these requests alone were insufficient, there is further evidence to support that defendant took substantial steps toward compelling Raean to comply with his requests to produce child pornography. With Raean, defendant pretended to be a 17-year-old high-school senior, and then pretended to be in a romantic relationship with Raean [*See id.* at 4, 11]. Defendant quickly began repeatedly telling Raean that he loved her [*Id.* at 16, 27, 49, 52, 118–19, 126, 129, 134, 141, 169, 181, 183, 185, 187, 192,

11

206, 215, 218, 220, 224, 234–35, 242, 249, 255, 268, 281, 315, 322, 338, 346–47, 352, 354, 357, 362, 392, 427–28, 433, 439, 461, 464, 472, 493–97] and calling her his "wifey" [*Id.* at 25, 81, 119, 131, 175, 383]. Defendant told Raean that he was going to marry her [*Id.* at 112, 133, 189], and even discussed having a baby together one day [*Id.* at 152–59]. Again, this grooming behavior, combined with the direct requests for nude images, was sufficient to constitute a substantial step towards the production of child pornography. *See Wales*, 127 F. App'x at 431 (holding that asking a minor for nude images while using a false persona was sufficient to support an attempted production of child pornography conviction).

Furthermore, defendant began asking Raean if she wanted to see nude images of him, particularly while he masturbated [*Id.* at 22–24]. And defendant asked Raean for photographs that were not nude, but were, nonetheless, sexually suggestive. For example, defendant asked her to send a picture of her bra, and a video of her "sucking on [her] finger" [*Id.* at 102–04]. Raean initially declined those requests, but defendant persisted, promising "Please I won't save it," "Just one time" "Make it go in and out" "Just one good time" [*Id.* at 105–06]. Defendant also asked Raean to send a photograph of herself in her panties [*Id.* at 265]. Moreover, at one point, defendant asked Raean if she would ever, in the future, send nude photographs, and, when she responded in the negative, defendant told her that it made him sad because "I want you, not porn, not anyone else, you and only you" [*Id.* at 90]. Raean told defendant she might change her mind one day, and defendant responded "I hope so" [*Id.*]. This additional grooming behavior, which appears directly geared toward

12

making the minor victim progressively more comfortable with sending sexual images and/or taking advantage of the emotional connection with the minor to compel her to send sexual photos, combined with the multiple direct requests for nude photographs, is sufficient to support that defendant took a substantial step towards the production of child pornography.

Accordingly, viewing all of this evidence in the light most favorable to the government, a rational jury could have determined that defendant took a substantial step toward the production of child pornography as relates to Count 8. Moreover, based on this evidence, the Court does not find that defendant's conviction on Count 8 was against the manifest weight of the evidence. Defendant's request for judgment of acquittal or a new trial as to Count 8 is therefore **DENIED**.

### B. Attempted Enticement (Counts 2, 4, & 9)

Defendant contends that, for each of the attempted enticement counts, the government failed to prove that he enticed any of the girls for the purpose of engaging in sexual activity [Doc. 48, p. 3].

Counts 2, 4, and 9 charged the defendant with attempted enticement of a minor, in violation of 18 U.S.C. § 2422(b) [Doc. 1]. To convict a defendant under this section, the government must show that the defendant (1) used the mail or any facility or means of interstate or foreign commerce, (2) to knowingly persuade, induce, entice, or coerce, or attempt to persuade, induce, entice, or coerce, (3) a person who the defendant believed to be under the age of 18, (4) to engage in prostitution or any sexual activity for which any

13

person can be charged with a criminal offense. *United States v. Vinton*, 946 F.3d 847, 852 (6th Cir. 2020). Defendant appears to only challenge the fourth element as to these counts, that is, he argues that the government did not establish that there was any intended sexual activity with the minors [*See* Doc. 48].[6]

### 1. Count 2 (Kylie)

Defendant notes that Count 2 relates to his agreement to meet who he thought was Kylie at a local park in Kingston, but, in reality, law enforcement had taken over Kylie's phone and were posing as her in conversations [Doc. 48, p. 3]. Defendant contends that testimony from Agent Dugger shows that it was his idea to propose a meeting at the park, not defendant's [*Id.* at 4]. And there was no discussion leading up to that meeting about what would happen at the park nor was there any sexual activity proposed [*Id.*]. Defendant notes that the meeting was to happen in broad daylight in a popular public space [*Id.*]. Defendant contends that the government relied on innuendo about what was going to happen at the park based on the general sexual nature of some of the previous messages, but such should not be evidence of guilt [*Id.*].

Viewing the evidence in the light most favorable to the government, there is sufficient evidence upon which a rational jury could find defendant attempted to entice Kylie to engage in sexual activity. First, to the extent that defendant argues that the

---

[6] However, notably, with regard to Count 5, defendant challenges whether the government adequately established that he knew that Emma was a minor. To the extent that defendant also intends that argument to relate to Count 4, the Court adopts its analysis, *infra*, and concludes that sufficient evidence supports that defendant was aware of Emma's age.

government has not established the enticement offense because he was actually talking to Agent Duggar, rather than Kylie, the Sixth Circuit has held that that the absence of an actual minor does not preclude a conviction for enticement of a minor under the statute. *United States v. Hackworth*, 483 F. App'x 972, 976 (6th Cir. 2012). Additionally, to the extent that defendant asserts that Agent Duggar initiated the discussion of meeting at the park, the Court notes that "the fact [that] a government agent proposed an illicit transaction . . . is insufficient to establish entrapment." *United States v. Hood*, 811 F. App'x 291, 298 (6th Cir. 2020) (internal quotation marks omitted) (quoting *United States v. Barger*, 931 F.2d 359, 367 (6th Cir. 1991)). Nor did defendant raise an entrapment defense at trial. Thus, the Court does not find these facts pertinent to whether the government provided sufficient evidence to support the enticement conviction on Count 2.

Moreover, contrary to defendant's assertion, there was specific discussion about what defendant wanted to happen when he met Kylie at the park. On April 20, 2022, the same day as the attempted meeting, at around 3:04 p.m., defendant told Agent Duggar, posing as Kylie, "I REALLY want to kiss you. I really really want to finger you. I want you under me right now . . . ." [GE 5, p. 4]. At approximately 3:18 p.m. defendant asks Kylie: "Wait are you a virgin?" [Id. at 6]. Agent Duggar, posing as Kylie, responds "Not exactly lol" "But close, never with a guy lol" [*Id.*]. Defendant replies "So I'll be your first? I can't go too hard then" [*Id.*]. Agent Duggar responds "Just dont [sic] hurt me lol" and defendant responds "Never! I like you too much. Like Wayyy too much. I'll play with you over and over though. I like using toys. I'm sooo horny rn it's crazy" [*Id.*]. Subsequently,

15

from approximately 3:30 p.m. to 3:40 p.m., defendant and Agent Duggar discuss plans to meet at the park [*Id.* at 6–7]. The following messages are then sent between defendant and Agent Duggar, posing as Kylie,

> Defendant: Really? What time do you need to be home?
> Kylie: Before 12 i have to get sleep for testing tomorrow
> Defendant: **So….I can take you home?**
> Kylie: Sure can lol
> Defendant: Fuck yea!!!

[*Id.* at 4–7 (emphasis added)]. Later, messages between the defendant and Kylie's account reflect that both defendant and Agent Duggar were at the park, but unable to initially located each other [*Id.* at 7–8]. At one point, defendant states that he is "sitting here waiting" and "**I can't wait to kiss you**" [*Id.* at 7 (emphasis added)]. Based on these conversations, which took place immediately prior to the proposed meeting at the park, there is ample evidence from which a jury could find that defendant intended to meet Kylie for the purpose of engaging in illegal sexual activity.

Accordingly, viewing all of this evidence in the light most favorable to the government, a rational jury could have found that the government established all of the elements of attempted enticement of a minor under 18 U.S.C. § 2422(b) as to Count 2. Moreover, based on this evidence, the Court does not find that defendant's conviction on Count 2 was against the manifest weight of the evidence. Defendant's request for judgment of acquittal or a new trial as to Count 2 is therefore **DENIED**.

16

### 2.    Count 4 (Emma)

As to Count 4, defendant states that his messages with Emma spanned several months, and, while graphic at times, the discussion of meeting up for sexual activity "was never fully discussed" [Doc. 48, p. 4].  While there were theoretical wishes and desires to one day meet in person, there were no definitive plans to do so [*Id.*].  Defendant notes that dates, locations, and travel plans were absent from these conversations [*Id.*].  And Emma's testimony confirms that defendant and Emma did not even know the city where one another lived, nor one another's full names [*Id.*].

Viewing the evidence in the light most favorable to the government, there is sufficient evidence upon which a rational jury could find defendant attempted to entice Emma to engage in sexual activity.  Despite defendant's assertion that there were merely theoretical ideas of meeting discussed, there were significant details about a potential meeting discussed between the two.  On February 19, 2020, defendant asked Emma what state she lived in, and, when she responded that she lived in New Hampshire, defendant stated "That's a days [sic] drive from me lol" [GE 13, p. 12].  The following exchange then occurred:

> Defendant: But….
> Emma: But?
> Defendant: If you let me I'll be there
> Emma: I would let you but I ain't trynna get u sent to jail .-.
> Defendant: But
> Defendant: Hotel. You and me.
> Defendant: Rope and toys.
> Defendant: Cum everywhere.
> Emma: What about my parents
> Defendant: Would you sneak out?

17

> Emma: Ur trying to get me killedddd
> Emma: But I want you to play with me
> Defendant: Psh I'm trying to get you pregnant lol but I don't want to stop playing.
> Emma: I realize how much trouble you could get in if someone found out about this …

[*Id.* at 12–13]. That night, the following exchange occurred:

> Defendant: I want to run to you
> Emma: I'm okay with thattt
> Defendant: Soon.
> Emma: How soonnnn
> Defendant: Shiiii **a week** lol
> Defendant: You let me in I'll be all yours.
> Emma: Okay

[*Id.* at 21–22 (emphasis added)]. The next morning, the following conversation occurred:

> Emma: Come to me [smiling emoji]
> Defendant: That's the plan tbh
> Defendant: I just want us
> Emma: Yay [smiling emoji]

[*Id.* at 25]. That night, during another sexually-charged conversation, defendant states: "I keep thinking how easy it would be to drive to you" [*Id.* at 31]. And, later in that conversation, he states "I'm about to say fuck it and I'm driving to you and fucking you senseless" [*Id.* at 35].

On February 24, 2020, defendant asked Emma "what's your address," but Emma declined to provide it [*Id.* at 47]. The conversation continued in a sexual manner and defendant stated: "You keep talking like I won't drive up there and make you take it" [*Id.* at 48]. Emma responded, "You won't" and defendant again said "Psh address?!" [*Id.*]. Emma again declined to give defendant her address [*Id.*].

18

Thus, contrary to defendant's assertions, specific timelines for meeting were discussed [*See* GE 13, pp. 21–22 (suggesting meeting in a week)] and defendant attempted to learn Emma's address with the stated intent of driving there to engage in illegal sexual activity [*See id.* at 47–48]. And the fact that defendant was unsuccessful in convincing Emma to meet him is irrelevant, as § 2422(b) criminalizes the intentional attempt to achieve a mental state, that is, a minor's assent to sexual activity, because Congress specifically designed the statute "to protect children from the act of solicitation itself." *United States v. Roman*, 795 F.3d 511, 516–17 (6th Cir. 2015).

Accordingly, viewing all of this evidence in the light most favorable to the government, a rational jury could have found that the government established all of the elements of attempted enticement of a minor under 18 U.S.C. § 2422(b) as to Count 4. Moreover, based on this evidence, the Court does not find that defendant's conviction on Count 4 was against the manifest weight of the evidence. Defendant's request for judgment of acquittal or a new trial as to Count 4 is therefore **DENIED**.

### 3. Count 9 (Raean)

As to Count 9, defendant contends that despite the duration and number of messages between himself and Raean, there was never a discussion of meeting up in person to engage in sexual activity [Doc. 48, p. 4]. In fact, on numerous occasions when defendant expressed thoughts of meeting up with Raean, she declined or offered "maybe one day" vaguely [*Id.* at 4–5]. Defendant states that his communications with Raean existed completely behind the direct messaging forum of SnapChat, and no plans, locations, or activities they would

19

engage in were ever discussed [*Id.* at 5]. Defendant argues that a conviction for enticement should not be based on the theoretical idea that he would one day meet with Raean and engage in unlawful sexual activity [*Id.*].

Viewing the evidence in the light most favorable to the government, there is sufficient evidence upon which a rational jury could find defendant attempted to entice Raean to engage in sexual activity. Contrary to defendant's assertions, throughout his messages with Raean he repeatedly tried to set up a meeting for purposes of illegal sexual activity. On December 8, 2021, shortly after defendant began messaging Raean on Snapchat, Raean told defendant that, before they had sex, defendant would need to get STD tested and show her the paperwork [GE 24, p. 15]. The next day, defendant told Raean "I want you so bad" and "Let me eat you out" [*Id.* at 35]. Raean responds "Maybe one day" and defendant says "Good. Soon too" [*Id.*]. Raean then reminds defendant that he needed to show her the paperwork from his STD testing first [*Id.* at 36]. On December 13, 2021, defendant messages Raean that he was at the doctor to get STD tested for her [*Id.* at 80–81]. And Raean testified at trial that defendant sent her a paper that purportedly showed that he tested negative for STDs. This evidence establishes that defendant took direct steps to comply with Raean's requested conditions for having sexual activity.

Further, defendant suggested at one point that he would travel to Raean's location to meet [*See id*. at 39 ("I'll come there!")] and, on another occasion, suggested that Raean travel to his location [*See id*. at 124 ("Come here lol")]. In both circumstances, Raean declined [*See id*. at 39, 124]. Defendant also suggested specific dates to meet. For

20

example, on December 19, 2021, defendant says, "Kiss me" and Raean responds "I wish I could" [*Id.* at 132]. Defendant responds, "You will" and when Raean asks "When," defendant responds "How about this weekend" [*Id.*]. On January 17, 2022, defendant pressed Raean about a timeline for meeting:

> Defendant: I want you
> Raean: I d [sic]
> Raean: Do too
> Defendant: How bad?
> Raean: Really bad
> Defendant: Show me
> Raean: Soon
> Defendant: How soon….
> Raean: Really soon
> Defendant: Like now lol
> Raean: No not now lol
> Defendant: Tomorrow? Lol
> Raean: No you dingis [sic] I have school lol
> Defendant: After school lol
> Raean: No, when I turn 15 I'll think about
> Raean: I turn 15 in literally 20 days

[*Id.* at 273–75]. On January 28, 2022, defendant followed up on this, asking Raean when they could meet up [*Id.* at 368–69]. The following messages followed:

> Raean: I told you when I turn 15
> Defendant: Mmhmm what day?
> Raean: February 6 but let's not do it that day.
> Raean: Since it's a school night
> Defendant: You're cute lol
> Defendant: **I'm just trying to plan something**
> Raean: I'm sorry I know I'm just nervous lol

[*Id.* at 369 (emphasis added)]. On January 31, 2022, defendant suggests to Raean that they "make a baby" together and suggests that they do it "Next week" [*Id.* at 388]. And on

21

February 1, 2022, defendant again followed up about meeting around Raean's 15th birthday:

> Defendant: I wanna grab that booty
> Raean: Anything you want
> Defendant: I'll see in a few days lol
> Raean: What do you mean lol
> Defendant: I'll see you in a few days lol
> Raean: What do you mean? Why will you see me in a few days lol
> Defendant: You'll be 15 lol
> Raean: Oh

[*Id.* at 430–31]. This evidence again shows that defendant repeatedly attempted to plan a specific time to meet up with Raean for the purposes of sexual activity. And, again, the fact that defendant was unsuccessful in enticing Raean to agree to meet with his is irrelevant for purposes of this attempted enticement count. *See Roman*, 795 F.3d at 516–17 (noting that the purpose of the statute is "to protect children from the act of solicitation itself.").

Accordingly, viewing all of this evidence in the light most favorable to the government, a rational jury could have found that the government established all of the elements of attempted enticement of a minor under 18 U.S.C. § 2422(b) as to Count 9. Moreover, based on this evidence, the Court does not find that defendant's conviction on Count 9 was against the manifest weight of the evidence. Defendant's request for judgment of acquittal or a new trial as to Count 9 is therefore **DENIED**.

## C.     Transfer of Obscene Material (Count 5)

Defendant argues that, for purposes of Count 5, the government did not establish that he knew Emma was less than 16 years old [Doc. 48, p. 5]. The only evidence of

22

Emma's age comes from the messages between the two, and there was no other corroboration of her age presented [*Id.*]. Defendant points to the Sixth Circuit's decision in *United States v. Hayek*, No. 22-5177, 2024 WL 2028048 (6th Cir. May 7, 2024) [*Id.*]. Defendant also notes that Agent Dugger testified that it is easy for someone to lie about their true identity online [*Id.* at 6]. Defendant argues that, without additional evidence of Emma's actual age, he was wrongfully convicted of Count 5 [*Id.*].

Count 5 charged the defendant with the transfer of obscene material to a minor, in violation of 18 U.S.C. § 1470 [Doc. 1]. To establish this offense, the government must prove (1) that defendant used a facility or means of interstate or foreign commerce to; (2) knowingly transfer obscene material to another individual; (3) such individual had not attained the age of 16 years; and (4) the defendant knew that such individual had not attained the age of 16 years. *United States v. Glatz*, No. 3:19-cr-218, 2024 WL 3933858, at *11 (E.D. Tenn. Aug. 23, 2024). Defendant appears to challenge only the fourth element, that is, whether he knew that Emma was under the age of 16 [*See* Doc. 48, pp. 5–6].

But the evidence shows that Emma told defendant that she was 13 years old. She testified to this fact at trial, and it is corroborated by the message transcripts [*See* GE 13, p. 3 ("but ur 20 and I'm 13")]. At one point in the conversation, defendant suggests that he would drive to New Hampshire to meet Emma, and she responds "I would let you but I ain't trynna get u sent to jail" [*Id.* at 12]. Defendant continues to suggest activities the two could engage in if they met, and Emma asks, "What about my parents" and defendant responds, "Would you sneak out?" [*Id.* at 13]. Emma also states, "I realize how much

23

trouble you could get in if someone found out about this . . ." and "I don't wanna get u introuble [sic] cuz then Nu more play" [*Id.*]. Emma also talks about being at school and sends defendant a picture of herself at school [*Id.* at 18–20, 26–29, 41]. She specifically mentions on one occasion that she is in class and does not want to get caught using her phone or it would get confiscated [*Id.* at 20]. At one point, Emma asks defendant "What happens if you gets in trouble daddy" and defendant responds "Then I'll just call you from jail" [*Id.* at 20]. Later in their conversations, defendant sends Emma a picture of a sex toy and tells her he wants to buy it for her [*Id.* at 36–37]. But Emma tells defendant he can't mail her a sex toy "cuz parents will see it before me [sad emoji] I'll get introuble [sic] [*Id.* at 37]. Throughout their conversations, Emma sent defendant numerous photos of her face and body [*Id.* at 6, 8–11, 14–15, 18, 23–24, 26, 40, 53, 55].

In *Hayek*, the defendant argued that there was insufficient evidence that he knew that the victim as underage and not an adult "role-playing" as a child. 2024 WL 2028048, at *4. But the Sixth Circuit found that "significant evidence suggests [the defendant] knew he was speaking to a minor." *Id.* Specifically, the Sixth Circuit cited the following evidence:

> During his interview, Hayek acknowledged that he knew the victim was underage. Likewise, the victim testified that she told Hayek she was ten, a point corroborated by screenshots of their chats. The victim also sent Hayek multiple photos of her face and body; the two even videochatted. When an officer assumed the victim's identity, she repeatedly mentioned that she was ten years old, which Hayek responded was "really young."

*Id.* The Sixth Circuit concluded that "[f]rom this collection of evidence, a reasonable juror could conclude that Hayek knew the victim was underage." *Id.*

24

It is unclear how *Hayek* supports defendant's motion. As in *Hayek*, there is significant evidence that defendant knew that the victim was under the age of 16 in this case. Specifically, the following evidence would support a rational juror concluding that defendant knew that Emma was under the age of 16: (1) Emma told defendant she was 13 years old; (2) the two discussed the legal trouble defendant could face for his conversations with Emma because of her age; (3) Emma's discussions of being in school; (4) the photographs and videos Emma sent of her face and body; and (5) Emma's mentions of getting in trouble with her parents if she snuck out to meet defendant or if she received a sex toy in the mail.

Accordingly, viewing this evidence in the light most favorable to the government, a rational jury could have found that the government established that defendant knew that Emma was under the age of 16 for purposes of 18 U.S.C. § 1470, as charged in Count 5. Moreover, based on this evidence, the Court does not find that defendant's conviction on Count 5 was against the manifest weight of the evidence. Defendant's request for judgment of acquittal or a new trial as to Count 5 is therefore **DENIED**.

### D. Transportation of Child Pornography (Counts 6 & 7)

Counts 6 and 7 charged the defendant with transportation of child pornography, in violation of 18 U.S.C. § 2252A(a)(1) [Doc. 1]. Section 2252A(a)(1) criminalizes knowingly mailing, transporting, or shipping, using any means or facility of interstate or foreign commerce, or in or affecting interstate or foreign commerce, by any means, including by computer, any child pornography. 18 U.S.C. § 2252A(a)(1).

25

Defendant raises two arguments regarding these counts: (1) his action of emailing the photographs from one email account to another, both managed by him, did not constitute transportation [Doc. 48, pp. 7–8]; and (2) the government did not prove that defendant knew that Alexis and Chloe were under the age of 18, and therefore, that the photographs constituted "child pornography" [*Id.* at 6–7].

### 1. Transportation Element

The Court will first turn to the issue of whether defendant's actions of emailing photographs from one email account to another email account, both of which were maintained by the defendant, and accessed through the same mobile device, constitutes "transportation" under the statute.[7]

Section 2252A(a)(1) does not define the term "transport" and the Sixth Circuit has not yet addressed the definition of the term "transport" within this statute. In interpreting statutory text, the Court must look to the "ordinary, contemporary, common meaning" of the word. *Southwest Airlines Co. v. Saxon*, 596 U.S. 450, 455 (2022) (internal quotation marks omitted). Section 2252A was enacted as part of the Child Pornography Prevention Act of 1996. Pub. L. No. 104-208, § 121, 110 Stat. 3009 (1996).

In 1996, Black's Law Dictionary defined the term "transport" as "[t]o carry or convey from one place to another." *Transport*, BLACK'S LAW DICTIONARY (6th ed. 1990).

---

[7] Notably, defendant does not appear to challenge whether the evidence was sufficient to establish that he engaged in this conduct, but rather, argues only that such conduct would not constitute "transportation" within the meaning of § 2252A(a)(1). Accordingly, the Court limits its analysis to statutory construction.

26

The Oxford English Dictionary defines "transport" as "[t]he action of carrying or conveying a thing or person from one place to another" and indicates that this definition of the term dates back to 1611. *Transport*, OXFORD ENGLISH DICTIONARY, https://www.oed.com/dictionary/transport_n?tab=meaning_and_use#17666554 (last visited Apr. 15, 2025). Additionally, other federal courts, in identifying the "ordinary meaning" of the term "transport" in this statute,[8] have found that it means to move something from one person or place to another. *United States v. Siepman*, 107 F.4th 752, 765–66 (7th Cir. 2024); *United States v. Wasson*, 847 F. App'x 523, 525 (10th Cir. 2021) (internal quotation marks omitted); *United States v. Rohani*, No. 3:22-cr-238, 2025 WL 356393, at *3 (D. Or. Jan. 31, 2025); *see also United States v. Carver*, No. 22-CR-316, 2024 WL 36988, at *7 (E.D.N.Y. Jan. 3, 2024) (addressing similar definitions of "transport"). The Court agrees and finds that the meaning of "transport" within § 2252A(a)(1) means to move the illicit materials to another person or another place.

---

[8] In analyzing this issue, this Court looks to case law addressing the term "transport" in both § 2252A and § 2252, as these back-to-back sections contain nearly identical language. Specifically, § 2252(a)(1) address a person who "knowingly transports or ships using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means including by computer or mail, any visual depiction if—(A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (B) such visual depiction is of such conduct[.]" 18 U.S.C. § 2252(a)(1). On the other hand, § 2252A(a)(1) address a person who "knowingly mails, or transports or ships using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, any child pornography[.]" 18 U.S.C. § 2252A(a)(1). And courts "generally presume that identical words used in different parts of the same act are intended to have the same meaning." *United States v. Cleveland Indians Baseball Co.*, 532 U.S. 200, 213 (2001) (internal quotation marks omitted).

27

But, notably, to "transport" illicit materials within the meaning of the statute, the defendant need not convey the materials to another individual; rather, moving the materials to another place is sufficient. *United States v. Fall*, 955 F.3d 363, 374 (4th Cir. 2020) ("Transportation . . . does not require conveyance to another person."); *United States v. Hyatt*, 28 F.4th 776, 783 (7th Cir. 2022) (stating, in the context of the enhancement for distribution under § 2G2.2 of the Sentencing Guidelines, "[a] person can 'transport' an item without distributing it to anyone."); *United States v. Tenuto*, 593 F.3d 695, 697–98 (7th Cir. 2010) (stating that, while the crimes of distribution and transportation of child pornography "are similar because a person who has distributed child pornography has likely transported it, and a person who transports it is likely to eventually distribute it" they are "still separate crimes," thus "a conviction for transporting child pornography does not necessarily entail distribution or an intent to distribute."); *Siepman*, 107 F.4th at 768 ("Unlike a distribution conviction under § 2252A(a)(2), a transportation conviction under § 2252A(a)(1) does not require another person to have received the illicit material—the government need only show that the defendant moved child pornography or caused it to be moved."); *Carver*, 2024 WL 36988, at *7 ("Notably absent from any definition of 'transport' is the requirement that an individual be present to receive whatever is being transferred. Indeed, the common meaning of the word transport does not require the existence of a recipient at all.").

Accordingly, the Court is left with the question of whether defendant's conduct here, that is, emailing the photographs at issue from one Google email account to another

Google email account, both of which belonged to defendant, constituted the moving of the photographs to another location. The Court notes that, for purposes of § 2252A(a)(1), "the term 'transport' does not require movement from one geographic location to another geographic location or from one recipient to another recipient. It only requires movement from one place to another." *United States v. Wasson*, 426 F. Supp. 3d 822, 827 (D. Kan. 2019). Courts have thus upheld transportation convictions based on various types of movement of files containing illicit materials on the internet, including uploading the files to file-sharing websites, *see United States v. Clingman*, 521 F. App'x 386 (6th Cir. 2013) (affirming a transportation conviction where defendant uploaded illicit images to a file-sharing website); *Fall*, 955 F.3d at 374–75 (affirming a transportation conviction when the evidence showed defendant "transported child pornography from his laptop's hard drive to an online file-sharing website"); *United States v. Davis*, 859 F.3d 429, 434 (7th Cir. 2017) (finding sufficient evidence to support a transportation of child pornography conviction when the evidence showed that defendant posted images onto a Shutterfly share site); *Siepman*, 107 F.4th at 764, 767–68 (affirming a transportation conviction where defendant made child pornography available to others for download on a peer-to-peer file-sharing network called "Shareaza"), sending the files via email, *see Tenuto*, 593 F.3d at 696–98 (affirming a transportation of child pornography conviction where defendant sent an email with illicit image attached), and uploading the files to the servers of other companies, *see Wasson*, 847 F. App'x at 526 (finding sufficient evidence to support defendant's transportation convictions when the evidence showed that defendant

29

"transported illicit images by uploading them from a personal device onto Yahoo messenger," "transported [illicit images] from [his] laptop to a server maintained by Google," and "transported [illicit material] from one of [his] personal devices to another individual through email"); *Carver*, 2024 WL 36988, at *7 (finding that an indictment sufficiently alleged a transportation charge based upon defendant's alleged movement of prohibited images to his personal Google drive folder).

But this case is unique in that the images at issue were moved from one Google email address, maintained by defendant, to another Google email address, also maintained by defendant. The parties cite no case law in which a comparable factual scenario has been addressed by any court, and this Court is not aware of any such case law.

Perhaps most similar to the instant case, earlier this year, the District of Oregon addressed a factual scenario where the defendant copy and pasted links containing child pornography to a private encrypted chatroom that contained 13 total users, but each of the 13 user accounts belonged to defendant. *Rohani*, 2025 WL 356393, at *1. That court first rejected defendant's contention that he had not transported child pornography because posting a link did not move the child pornography from the server on which it was originally contained. *Id*. at *2–3. The court concluded that, although there was no direct transfer of files, the sharing of the encrypted link to the file stored on Mega's server was functionally equivalent to sharing the file itself. *Id*. at *3.

Turning to whether the defendant "transported" the illicit materials, the court stated: "Defendant copied links containing child pornography from one place and posted them

into a chatroom. This conduct, by itself, establishes the two places necessary to sustain a conviction for transportation. The links began in one place, whether in another chatroom or somewhere else on the internet. Defendant then transferred the links to a different place: the "Me" chatroom." *Id*. at *4. The court further stated that defendant "arguably transported the links to different people by pasting the links into a chatroom with several different participant accounts whose users could readily access the child pornography links" even though defendant himself maintained each of the accounts. *Id*.

Additionally, in *Hyatt*, the Seventh Circuit grappled with the distinction between distribution and transportation where the defendant was charged with transportation and receipt of child pornography, pled guilty to the receipt offense, and received a distribution enhancement under § 2G2.2 of the Sentencing Guidelines. 28 F.4th at 780. In addressing that issue, and specifically, discussing how "[a] person can 'transport' an item without distributing it to anyone," *id*. at 783, the Seventh Circuit stated the following in dicta:

> What about more modern types of transportation, such as an attachment to an email, or the provision of a link in a text, or the use of a cloud-storage device? We asked the government at oral argument whether it would take the position that Hyatt had "distributed" something if he just sent an email to himself with an attachment containing the images. To our surprise (given the argument about Dropbox) the assistant U.S. attorney responded that email is different, because it is not designed for ready distribution. Really? Anyone who has ever been bombarded with spam emails, or group text chains, or email ads, would beg to differ.

*Id*. at 784. This language at least implicitly suggests that the Seventh Circuit believed that the act of emailing an attachment to oneself would constitute "transportation."

31

Considering this case law, as well as the plain meaning of the term "transport," the Court concludes that defendant's conduct of emailing the images from one email account to another email account constituted transportation, even though both email accounts were maintained by defendant. Ultimately, the fact that defendant maintained both email accounts is irrelevant to whether defendant transported the images, as courts have repeatedly stated that a separate recipient is unnecessary for the crime of transportation. *See Fall*, 955 F.3d at 374; *Tenuto*, 593 F.3d at 697–98; *Siepman*, 107 F.4th at 768. This is logical; to hold otherwise would conflate the separate crimes of transportation and distribution into a single offense. *See* 18 U.S.C. § 2252A(a)(1) (criminalizing transporting or shipping child pornography); 18 U.S.C. § 2252A(a)(2) (criminalizing receiving or distributing child pornography). Moreover, this comports with the "cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (internal quotation marks omitted); *see also Hyatt*, 28 F.4th at 783 (citing the surplusage canon and asking, "if transportation is, by definition, distribution, then why bother to have two terms at all?").

The Court also finds that moving the images from one email account to another constituted moving the images from one location to another location, and therefore, was transportation. Each email account essentially is a separate location, and, by transmitting the images from one account to another, defendant transported the images. By sending these images from one email account to another, defendant increased his ability to access

32

the images, and a jury could reasonably infer that defendant's purpose in sending these images between his email accounts was to allow him to access the images through more than one account. *See Rohani*, 2025 WL 356393, at *4 (stating that "[i]t would be reasonable to infer that the purpose of having multiple accounts was to allow Defendant to continue using Mega if any of his accounts were disabled"). Accordingly, the Court finds that emailing the images from one email address to another constituted transportation for purposes of § 2252A(a)(1). Defendant's request for judgment of acquittal or a new trial as to Counts 6 and 7 on this ground is therefore **DENIED**.

## 2. Scienter Requirement

For purposes of § 2252A(a)(1), "child pornography" is defined in relevant part as: any visual depiction . . . of sexually explicit conduct, where—(A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct[.]" 18 U.S.C. § 2256(8). A "minor" means "any person under the age of eighteen years[.]" 18 U.S.C. § 2256(1). Section 2252A(a)(1) contains a scienter requirement as to the nature and character of the proscribed materials. *United States v. Brown*, 25 F.3d 307, 309 (6th Cir. 1994). But knowledge of the contents of the material may be shown by circumstantial evidence. *United States v. Moran*, 771 F. App'x 594, 599 (6th Cir. 2019) (quoting *United States v. Hentzen*, 638 F. App'x 427, 431 (6th Cir. 2015)).

Defendant argues that the evidence presented at trial was insufficient to show that he knew that either Alexis (Count 6) or Chloe (Count 7) were under the age of 18 when

33

they took the nude photographs of themselves, and therefore, to show that he knew that the images were child pornography [Doc. 48, pp. 6–7].

### a.    Count 6 (Alexis)

At trial, Alexis testified that she was born in September 2003.  In June of 2020 to July of 2021, she worked at the Sonic in Kingston, Tennessee, and was 16 and 17 years old during that time.  She was a sophomore and junior in high school during this period of time.  Alexis worked with defendant at Sonic during that time, where both were car hops. While they worked together, defendant would talk to Alexis through the headsets where only she could hear him and comment on how she looked.  Alexis felt that defendant's comments were inappropriate because of his age, because he was 30 at the time.  Alexis testified that the defendant knew her stepfather because they went to school together, which was discovered while Alexis, her step-father, and defendant were all at Sonic on one occasion.  When asked if there were other ways that defendant would know that she was "a high school kid" at the time she was working at Sonic with him, Alexis responded that she would wear her band sweatshirt while working her shift on occasion.  Alexis also testified that most of the employees at Sonic at that time were high school students.

Viewing this evidence in the light most favorable to the government, a rational juror could conclude that sufficient evidence existed that defendant knew that Alexis was under the age of 18, and therefore, the nude photographs he requested from her were child pornography.  Specifically, the evidence showed that most of the Sonic employees were high school students and Alexis identified herself as a high school student by wearing high

34

school band apparel while at work. Moreover, the evidence showed that defendant knew that he had gone to high school with Alexis's step-father, and therefore, would have known the approximate age of Alexis's stepfather. From this evidence, defendant at least had reason to believe that Alexis may be under the age of 18. *See Ramsbottom v. Ashton*, 3:21-cv-272, 2024 WL 4993391, at *20 (M.D. Tenn. Dec. 5, 2024) (noting that, while the Sixth Circuit has not directly addressed whether deliberate ignorance can satisfy the knowledge requirement in §§ 2252 and 2252A, other courts have applied such and finding that applying a "deliberate ignorance" or "willful blindness" standard was appropriately applied).

Ultimately, viewing this evidence in the light most favorable to the government, a rational jury could have found that the government established that defendant knew that Alexis was under the age of 18 for purposes of 18 U.S.C. § 2252A(a)(1), as charged in Count 6. Moreover, based on this evidence, the Court does not find that defendant's conviction on Count 6 was against the manifest weight of the evidence. Defendant's request for judgment of acquittal or a new trial as to Count 6 is therefore **DENIED**.

### b.    Count 7 (Chloe)

Chloe testified that she was born in December 2002. In 2018 to 2019 she was 15 to 16 years old and was a freshman in high school. Chloe met defendant at Sonic when she was going there to get food. At some point, they discussed how Chloe wanted to join the military, and defendant mentioned he had been in the military and suggested Chloe add him on social media to discuss. Specifically, Chloe testified that she told defendant that

35

when she turned 17, she wanted to go into the military but would have to ask her parents to sign off on it. Chloe testified that defendant knew that she was not above 18, because she told him that her parents had to sign off for her to go to the military, and she also told him that she was in high school.

Viewing this evidence in the light most favorable to the government, a rational juror could conclude that sufficient evidence existed that defendant knew that Chloe was under the age of 18, and therefore, the nude photographs he requested from her were child pornography. Specifically, Chloe testified that she told the defendant that w*hen she turned 17*, she wanted to join the military but would need her parents to sign off on it.

Accordingly, viewing this evidence in the light most favorable to the government, a rational jury could have found that the government established that defendant knew that Chloe was under the age of 18 for purposes of 18 U.S.C. § 2252A(a)(1), as charged in Count 7. Moreover, based on this evidence, the Court does not find that defendant's conviction on Count 7 was against the manifest weight of the evidence. Defendant's request for judgment of acquittal or a new trial as to Count 6 is therefore **DENIED**.

## IV. Conclusion

For the reasons discussed, the Court finds, after viewing the evidence in a light most favorable to the government, that a rational trier of fact could have found beyond a reasonable doubt that the government proved all elements of the counts of conviction addressed herein. Additionally, the Court finds that granting defendant a new trial is not

36

in the interest of justice.  Neither a judgment of acquittal nor a new trial is warranted, and

defendant's motion [Doc. 48] is therefore **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE